IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     v.                        Case No.:     1:22-cr-00358-RC

TRAVIS BARTOW,
     Defendant.

## DEFENDANT'S AMENDED MEMORANDUM IN AID OF SENTENCING

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, TRAVIS

BARTOW, comes now and submits the following:

**I.**     **Objections to Presentence Report**

The defendant does not object to any of the factual assertions in the report.

**II.**     **Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A

3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns

as well.  Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to
> comply with the purposes set forth in paragraph (2) of this subsection.  The court,
> in determining the particular sentence to be imposed, shall consider—
>> (1)    the nature and circumstances of the offense and the history and
>> characteristics of the defendant;
>> (2)    the need for the sentence imposed—
>>> (A)    to reflect the seriousness of the offense, to promote respect
>>> for the law, and to provide just punishment for the offense;
>>> (B)    to afford adequate deterrence to criminal conduct;
>>> (C)    to protect the public from further crimes of the defendant;
>>> and
>>> (D)    to provide the defendant with needed educational or
>>> vocational training, medical care, or other correctional
>>> treatment in the most effective manner;
>> (3)    the kinds of sentences available;
>> (4)    the kinds of sentence and the sentencing range established for—
>>> (A)    the applicable category of offense committed by the
>>> applicable category of defendant as set forth in the

> guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
>
> (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
>
> (5)    any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
>
> (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)    the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

**A. Advisory Sentencing Guidelines**

As noted in the presentence report the federal advisory guidelines do not apply to the single count of conviction. The statutory maximum period of incarceration is six months.

**B. § 3553(a) Sentencing Factors**

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a).  The defendant submits an application of these factors to the case at bar leads to the conclusion that a probationary sentence would be sufficient and not greater than necessary.

**1. History and Characteristics of The Defendant**

The presentence investigative report summarizes Mr. Bartow 's background.  Although the guidelines do not apply to his offense of conviction, an application of the guidelines to his criminal history would produce a category I.  He has no prior convictions.  His criminal history is devoid of any arrests for weapons, firearms, or crimes of violence.

Mr. Bartow does not have a history of substance abuse or mental illness.  He is a college graduate.  He has earned numerous certifications and has a lengthy history of stable employment.  Currently, Mr. Bartow is gainfully employed.  During the pendency of this matter Mr. Bartow has been on pretrial supervision.  There are no reports of Mr. Bartow failing to comply with any of his conditions.  His income satisfactorily meets his needs but does not provide sufficient means to address any potential fine to be imposed in this matter.

In summary, Mr. Bartow is a 32-year-old male with no criminal history.  He does not have a debilitating substance abuse problem.  His mental health history also should not give this Honorable Court any great concern.  His family life and job stability are further support for the conclusion that any period of incarceration is unwarranted.  Mr. Bartow further respectfully

requests that the Court consider the attached letters of support prior to fashioning an appropriate sentence.

### 2.   Nature of the Offense

Mr. Bartow fully acknowledges the nature of the offense.  He entered a plea of guilty and embraces the statement of offense filed in conjunction with his plea agreement with the government.  The events of January 6, 2021, were disturbing to our nation.  Mr. Bartow understands that he unfortunately played a role in the events.

Mr. Bartow, like millions of Americans, became convinced that the results of the 2020 presidential elections were the result of fraud.  This belief was fueled by Congressional leaders and the President of the United States.  Mr. Bartow's original intent was to simply attend the demonstration at the United States Capitol.  It was not to participate in a violent attack on the Capitol.  Unlike others, Mr. Bartow was unarmed.  He was not a part of any organized pre-planning to attack the Capitol.  In the company of his sister Mr. Bartow entered the Capitol without the use of force.  Once in the Capitol he did not engage in any assaults on law enforcement.  He remained in the building for approximately 30 minutes.

On January 6, 2021, Mr. Bartow, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol.  This Honorable Court is all too familiar with what would soon follow.  It is noteworthy that Mr. Bartow did not assault any member of law enforcement. He entered the Capitol after others had caused the breach.  Nor did Mr. Bartow use any weapons.

### 3.  Need to Deter

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here

is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Since his arrest Mr. Bartow has been on pretrial supervision.  He remains under restrictions imposed by this Court.  During that time, he has not been subject to any new arrest.  He has complied with all conditions.  The restraints on his liberty have been consequential.  It provides more than adequate specific deterrence for Mr. Bartow.  Most significantly he will forever be reminded of his role in one of the darkest days in our country's history.  It is something that he will be confronted with for the rest of his life.

### 4.     Need to Avoid Unwarranted Disparities

This Honorable Court must remain mindful of the need to avoid unwarranted disparities between similarly situated defendants.  The government advocates for a sentence of 21 days of incarceration. Again, the advisory guidelines do not apply.   Mr. Bartow's conviction is a misdemeanor.  In determining an appropriate sentence Mr. Bartow urges this Honorable Court to examine and consider other sentences imposed on defendants convicted of criminal offenses connected with January 6.

Again, Mr. Bartow is not before the Court on a felony conviction.  His offense did not involve any acts of violence.  He has no prior convictions.  Consistent with the sentences imposed by on other similarly situated January 6 defendants a sentence of probation is appropriate.

There is no legitimate reason to treat Mr. Bartow significantly harsher than others who have been held accountable for their participation in the January 6 events.  Yes, Mr. Bartow violated the law.  However, he did not physically attack any law enforcement officers.  He did not directly cause any bodily injury to any law enforcement officers.  He does not stand convicted of a conspiracy offense.  He did not possess or employ any weapons.

This Honorable Court understands many of those convicted of January 6 offenses possessed weapons.  Many employed pepper and bear spray.  Some offenders used other weapons against law enforcement.  All these actions are far more serious transgressions that those performed by Mr. Bartow.  His punishment should be reflective of his actions and should be imposed with an understanding of the treatment of others.

Mr. Bartow submits the comparison to others made by the government in her sentencing memorandum are inappropriate.  He further submits a 21-day period of incarceration would be greater than necessary.

*United States v. Joshua Dressel*, 21-cr-572 (CRC)

Mr. Dressel was sentenced to serve 14 days of incarceration.  Like Mr. Bartow, he entered the Capitol after the initial breach by others.  While inside the Capitol their respective conduct was similar.  However, unlike Mr. Dressel there is no evidence that Mr. Bartow attempted to obstruct justice by destroying evidence.  As the government notes, after his offense Mr. Dressel attempted to destroy evidence by deleting materials from his Facebook account and phone.  Nevertheless, the government recommends a sentence 33% higher for Mr. Bartow.  This cannot be justified.

*United States v. Jodi Wilson*, 22-cr-243 (CKK)

Ms. Wilson was sentenced to serve 20 days of incarceration.  While acknowledging that Mr. Bartow's conduct was "slightly less" the government still recommends a higher sentence than imposed on Ms. Wilson.  Again, Mr. Bartow's conduct inside the Capitol is like Ms. Wilson's. Neither committed any acts of violence.  Both submitted to post arrest interviews with law enforcement.  Both were untruthful at some point.  However, unlike Ms. Wilson the defendant ultimately acknowledged his criminal conduct to law enforcement.  Ms. Wilson maintained her false positions.  It is disingenuous to advocate for a higher sentence for Mr. Bartow.

*United States v. Marilyn Fassell*, 21-cr-692 (CKK)

Ms. Fassell was sentenced to serve 30 days of incarceration.  Again, her conduct inside the Capitol is fairly like Mr. Bartow's.  However, Ms. Fassell was boastful about her participation in the events on January 6 on social media.  Mr. Bartow did nothing of the kind.  She further lied to law enforcement when interviewed.   Again, while Mr. Bartow initially was untruthful in his interview, he ultimately told the truth.

Other Probationary Sentences

As the court is undoubtedly aware, many defendants convicted of misdemeanor offenses have received probationary sentences.  The common denominators between them appears to be (1) lack of evidence of any pre-planning; (2) no assaultive conduct; (3) no weapon possession; and (4) lack of criminal history.  Mr. Bartow squarely satisfies these criteria.  Upon information and belief, move than 80 similarly situated defendants have received probationary sentences.  Some have included periods of home incarceration and community service.  Mr. Bartow submits his conduct warrants a similar outcome.

**C.      Recommended Sentence**

Mr. Bartow submits a sentence of probation would satisfy the legitimate goals of sentencing.  Such a sentence followed by a period of supervised release would be consistent with other sentence imposed in those convicted of criminal violations arising out of the January 6 events at the Capitol.

**III.    Conclusion**

Wherefore the defendant, **TRAVIS BARTOW**, respectfully requests that this Honorable Court sentence to a period of probation.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant TRAVIS BARTOW

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on November 20, 2023.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street

Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant TRAVIS BARTOW